UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
MARIA E. SOLACHE,

                 Plaintiff,

    - against -

CBS CORPORATION, and JIM MORRISON,
Individually,

                 Defendants.
-------------------------------------------------------X

COMPLAINT

2019 CV _____

Jury Trial Demanded

      COMES NOW Maria E. Solache ("Ms. Solache" or "Plaintiff"), by and through her attorneys, The Law Offices of Neal Brickman, P.C., located at 420 Lexington Avenue, Suite 2440, New York, New York 10170, and as and for her complaint against Defendants, CBS Corporation ("CBS") and Jim Morrison ("Morrison" and, collectively with CBS, "Defendants") hereby avers and states as follows:

<u>Statement Pursuant to Local Civil Rule 1.9</u>

    1.    Plaintiff is a citizen of Mexico and a permanent resident of the United States of America and, as such, has no interests or subsidiaries that need to be disclosed.

<u>Nature of the Action</u>

    2.    This action arises under Title VII of the Civil Rights Act of 1964, as amended; New York Executive Law §296 et seq. and New York City Administrative Code §8-107 et seq., based on Defendants' disparate treatment and improper and illegal retaliatory termination of Ms. Solache.

    3.    This action seeks compensatory and punitive damages, as well as costs and attorneys' fees, based on the discriminatory and retaliatory actions undertaken by Defendants in their discriminatory and disparate treatment and improper and illegal retaliatory termination of Ms. Solache based upon her national origin.

## Jurisdiction

4.      Jurisdiction over the federal claims is invoked pursuant to 28 U.S.C. § 1331, in that these claims arise under the laws of the United States; and over the state law claims pursuant to the doctrine of pendent jurisdiction as codified in 28 U.S.C. § 1367.  This action is timely filed within ninety (90) days of the issuance of a valid Right to Sue letter from the Equal Employment Opportunity Commission ("EEOC"), a copy of which is annexed hereto as "Exhibit "A".

## Venue

5.      This action is properly laid in the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(1), because Defendant CBS is a publicly traded company headquartered in New York, because Defendants employed Claimant in this district, and because the events and omissions giving rise to the claims asserted herein occurred in this judicial district.

## Parties

6.      Ms. Solache is a citizen of Mexico and a permanent resident of the United States of America, presently residing in the State of Connecticut.  Claimant began working for Defendants on December 2, 2014 in the capacity of "Director, International Treasury."  Ms. Solache was improperly terminated by Defendant on June 25, 2018.

7.      CBS Corporation ("CBS") is a publicly traded company headquartered in New York.

8.      Upon information and belief, Defendant Jim Morrison ("Morrison") is an individual citizen of the United States of America, residing in the State of New Jersey,  and was Ms. Solache's direct Supervisor. Mr. Morrison qualifies as an "employer" for purposes of individual liability under New York Executive Law § 296, and New York City Administrative

Code §§ 8-107 and 8-502 because he participated directly in the discriminatory conduct at issue in this case and as an "employer" under § 296 of the Executive Law by virtue of his ability to effect the terms and conditions of Plaintiff's employment.

## Summary of the Action

9.      The essence of Ms. Solache's claim is that Defendant treated her differently from other employees, underpaid her because of her national origin, failed to give her a title or salary commensurate with her position and responsibilities, and, when Ms. Solache questioned the manner in which she was being treated, Defendants retaliated against her by manufacturing a pretext for its termination of Ms. Solache's employment. The actions of Defendants throughout Ms. Solache's employment with CBS contravenes, *inter alia*, Federal, City, and State anti-discrimination statutes, as well as Defendants' own rules and regulations.

## Simple Statement of Relevant Facts

10.     In November 2014, Ms. Solache accepted an offer of employment from Defendants. She began working at CBS on December 2, 2014 as a Director of International Treasury.  Plaintiff's starting salary was $150,000.00 annually.  Plaintiff was also to receive a bonus and was eligible for awards under both the Short Investment Plan and the Long-Term Incentive Plan.

11.     As Director of International Treasury, Ms. Solache was responsible for all of International Treasury. This included, but was not limited to, overseeing foreign exchange hedging and trading operations, working with the international tax group on legal entity restructuring and repatriation projects, managing funding of international entities, overseeing international bank accounts, investing excess cash balances, working on cash forecasting, following global economic market conditions and regulatory developments, supporting

international finance teams, and assisting with Pension Investment projects. Plaintiff was also expected to lead or assist on strategic Treasury projects – both international and domestic – as may be required.

12.     Ms. Solache reported directly to Morrison, who was the Vice President, Assistant Treasurer in the Corporate Treasury Group.

13.     In January 2015, Ms. Solache learned from CBS' Human Resources Department ("HR") that it had failed to file paperwork necessary to transfer Plaintiff's H1B visa from a previous employer to CBS. As a result, CBS was forced to terminate Plaintiff on February 13, 2015. Plaintiff was rehired by CBS on March 23, 2015, on the same terms to which she had previously agreed. Ms. Solache was given a lump sum payment of $21,000.00 to "compensate" her for the time during which she was unemployed as a result of CBS' error.

14.     Upon her return to CBS, Ms. Solache was informed by HR that it would begin the process of obtaining Ms. Solache's Green Card.

15.     In 2017, CBS received from the Department of Labor ("DOL") the prevailing wage determination based on the job description provided to it by HR and Ms. Solache's responsibilities at CBS. Following its review of the information provided by CBS, DOL determined that Ms. Solache should be paid 40% more than she was then being paid by CBS.

16.     At the time that the DOL prevailing wage determination was received, Ms. Solache was being paid approximately $161,000.00 annually. The determination of DOL, however, was that the correct salary for an individual performing the job of Plaintiff was approximately $227,000.00 annually – a difference of more than 40% of what CBS was paying Ms. Solache.

17.     Ms. Solache was notified on July 9, 2017 that her Green Card was approved.

18.     To comply with the DOL's prevailing wage determination, CBS began paying Ms. Solache at the rate of $227,000.00 annually. However, CBS advised Plaintiff that her salary would be maintained at the higher level for only the six months during which it was likely that there would be DOL monitoring of the situation.

19.     In January 2018, CBS was confident that the eyes of DOL were no longer upon it and it dropped Plaintiff's salary back to $161,000.00. CBS told Ms. Solache to consider the "extra funds" it had paid her during this short period -- which amounted to no more than $30,000.00 -- her "bonus" for 2018.

20.     For as long as Plaintiff was being paid at the rate of $227,000.00 per year, the expected annual bonus would be approximately $45,500, or 20% of that base salary. Even at the lower compensation level of $161,000.00, Plaintiff could reasonably expect to receive a bonus of no less than $32,200.00. The sum belatedly designated as a "bonus" by CBS, therefore, fell considerably short in numerous respects.

21.     While employed by CBS, Ms. Solache received only positive reviews from superiors. The esteem in which Plaintiff was held is evidenced by letters received from Defendant CBS granting her awards under the CBS Corporation Long-Term Management Incentive Programs (LTMIP). Two of such letters are attached hereto as Exhibit B. The Letters comprising Exhibit B specifically state: "[y]our inclusion as a recipient of the [2017,2018] LTMIP award signals our recognition that you hold a position that will play an important part in achieving the business results...." At no time was Plaintiff informed of any serious complaints regarding her work. Nor was she ever notified of any concerns with respect to her performance[1].

---

[1] CBS belatedly claimed that Ms. Solache's job performance was less than exemplary, but no formal reviews were done and there is no written record of any complaints.

5

22.     Ms. Solache became aware, however, that other CBS employees in positions comparable to hers, with responsibilities commensurate with hers, held more impressive titles and, upon information and belief, were receiving substantially higher salaries.[2] The primary difference between Plaintiff's situation and those of other similarly situated CBS employees is that Ms. Solache is Mexican and the others are American.

23.     Plaintiff asked management why her title was "Director," while those with comparable responsibilities were "Vice Presidents."   No explanation was provided for this disparity in recognition and prestige.

24.     Shortly after her inquiry with respect to the disparity in treatment between her and her colleagues, Ms. Solache's employment with CBS was terminated. The stated reason for termination was "insubordination." This charge is pretextual.

25.     In her position as Director of International Treasury, Plaintiff had the authority to approve  trades – both internal and external foreign exchange currency trades – without supervisory approval.   Each year, the authority to make such trades was delegated to Plaintiff by letter directly from then Chief Operating Officer of CBS, Joe Ianello. CBS' policy for trade execution and approval was to segregate duties, so that trades were not both executed and approved by one person. Therefore, Ms. Solache was required to get approval for trades executed by her, and she could approve trades executed by other authorized employees.

26.     The charge of insubordination purports to arise from an incident that began on June 15, 2018 when Plaintiff sought approval from her supervisor, CBS' treasurer, Jim Morrison ("Morrison"), to proceed with a proposed hedging strategy involving the execution of some internal trades and external trades.  Ms. Solache had the authority to approve the trades under

---

[2] These similarly situated employees traded different products than Plaintiff did but were nonetheless comparable in terms of work responsibilities. Yet, the American employees were paid more and enjoyed more prestigious titles.

consideration and was NOT required to get supervisory approval as Ms. Solache's direct report was executing those trades. This was a common practice for trade execution.

27.     Nonetheless, when Ms. Solache explained the proposed hedging strategy to Morrison, he indicated his preference that, before executing the internal trades under consideration, Plaintiff get the approval of Vec Russo ("Russo"), the controller of CBS TV Distribution ("CTD"), one of the entities involved in the proposed internal trade, to ensure Russo agreed with the accounting of those trades.  Ms. Solache proceeded promptly to obtain the approval of both Russo and Ana Arruda, the CTD Vice President of Finance. Morrison was copied on the email in which Russo approved the internal trade. The trade was completed by June 19, 2018.

28.     For the particular **external** trade Ms. Solache sought Morrison's approval.  When she was unable to obtain Morrison's approval for the external trade, Plaintiff did not execute the external trade.

29.     On June 22, 2018, discussions took place with CBS Accounting regarding external hedges and their compliance with new accounting regulations. Morrison and Plaintiff discussed canceling the CTD internal trades that had been approved by Russo and executing them externally. Morrison asked Claimant to provide cost analyses for gains and/or losses if the previously executed trades were canceled. Ms. Solache provided promptly the requested analyses that demonstrated that, as they existed, there would be no overarching impact for CBS – a loss to one entity would mean a gain to another since they were internal trades.

30.     On June 25, 2018, Morrison requested additional analysis and asked Plaintiff to hold off on some other proposed trades while Morrison explored possible different trade scenarios.

31.     On the afternoon of June 25. 2018, Ms. Solache was told by a representative of CBS' Human Resources Department ("HR") that she was being terminated for "insubordination" for having made the CTD trades without Morrison's approval.  Plaintiff was immediately and unceremoniously escorted from the Premises.

32.     The stated reason for termination is clearly pretextual in that Ms. Solache had specifically obtained the approval requested by Morrison for the internal trades made, and Ms. Solache had NOT executed the external trades precisely because she had not procured the necessary approval for those trades.

33.     Despite Ms. Solache's authority to make the internal trades without supervisory approval, she actually exhibited considerable professional deference to Morrison in obtaining the approvals he requested for the internal trades and in not executing the external trades for which she had not received his approval.  The allegation of "insubordination" is,  therefore, wholly unsupportable.

34.     Rather, CBS knew that its paying Plaintiff a salary that was not commensurate with her job description, responsibilities, and experience was indefensible. This is borne out by the prevailing wage determination made by DOL, and CBS' reluctance to compensate Ms. Solache at the market rate is evidenced by its prompt reversion to the lower salary when DOL monitoring was no longer likely.

35.     The fact the American citizens employed by CBS were receiving market-rate salaries and were endowed with more prestigious job titles than Plaintiff's underscores the fact that CBS was treating Ms. Solache differently on the basis of her national origin and its stated reason for terminating her employment is retaliatory and pretextual.

8

36.     As a direct result of these bad acts on the part of Defendants, Ms. Solache has suffered injury and harm.

### AS AND FOR A FIRST CLAIM
(Violation of Title VII as to Defendant CBS)

37. Plaintiff repeats, reiterates and realleges each and every allegation set forth in paragraphs "1" though "36" above as though fully set forth herein.

38. Title VII prohibits workplace discrimination, adverse employment decisions and disparate treatment on the basis of national origin. Plaintiff is a citizen of Mexico – a protected class.

37.     As determined by DOL, Ms. Solache was being woefully underpaid for the position she held at CBS.

38.     Compared to similarly situated American employees at CBS, Plaintiff was being paid less and was denied a title commensurate with her level of responsibilities and experience.

39.     Plaintiff was treated in a disparate manner despite her high – and well recognized – level of job performance.

40.     No similarly situated employees were subjected to the discrimination and disparate treatment which Ms. Solache endured.

41.     As a direct result of the ongoing disparate and discriminatory treatment to which Plaintiff was subjected, Ms. Solache has suffered injury and harm and requests a judgment for damages, including front and back pay, loss of unvested deferred compensation, damage to reputation and other reasonable consequential damages in an amount to be determined at trial, but in no event less than One Million Dollars ($1,000,000.00); punitive damages; the costs and disbursements of this action, including reasonable attorneys' fees; all relevant interest, and any such further relief to Plaintiff as this Court deems just and proper.

9

## AS AND FOR A SECOND CLAIM
### (Disparate Treatment and Discrimination under New York State
### and City Statutes as to Defendants CBS and Morrison)

42. Plaintiff repeats, reiterates, and realleges each and every allegation set forth in paragraphs "1" through "44" above as though fully set forth herein.

43. Both the New York Executive Law and the New York City Administrative Code prohibit workplace discrimination, adverse employment decisions, and disparate treatment on the basis of national origin and on the part of individual employers.

44. As a citizen of Mexico, Plaintiff is a member of a protected class.

45. As detailed above, such improper disparate and discriminatory treatments included, but was not limited to, underpaying Ms. Solache for the work she was performing and failing to bestow upon her a job title that befit the authority she had, the responsibilities she had, and the work she performed in her capacity as an employee of CBS.

46. None of the treatment to which Ms. Solache was subjected had any legitimate or non-discriminatory bases.

47. No similarly situated American employees were subjected to such disparate and discriminatory treatment.

48. As a direct result of this ongoing discriminatory behavior on the part of CBS, Ms. Solache has suffered – and continues to suffer – injury and harm and requests a judgment for damages, including front and back pay, loss of unvested deferred compensation, damage to reputation and other reasonable consequential damages in an amount to be determined at trial, but in no event less than One Million Dollars ($1,000,000.00) in compensatory damages; punitive damages (under the City Administrative Code only); the costs and disbursements of this

action, including reasonable attorneys' fees (under the City Administrative Code only); all relevant interest; and any such other and further relief to Plaintiff as this Court deems just and proper.

## AS AND FOR A THIRD CLAIM
(Retaliation Under Title VII as to Defendant CBS)

49.     Plaintiff repeats, reiterates, and realleges each and every allegation set forth in paragraphs "1" through "51" above as though fully set forth herein.

50.     Title VII prohibits workplace discrimination in the form of retaliation.

51.     Despite the fact that Plaintiff had enjoyed a well-deserved positive reputation for her performance in the three and one-half years she worked at CBS, shortly after she raised questions to her employer regarding the disparate treatment in salary and job title to which she was subjected, a pretextual reason to terminate her was created, and she was terminated.

52.     As the facts surrounding Plaintiff's termination conclusively demonstrate, the pretextual stated reason of "insubordination" was clearly manufactured.  CBS' own records demonstrate, (a) that Ms. Solache showed deference to her employer – rather than insubordination – in getting the approval he requested even though she was not required to do so, and (b) she did not execute the trade for which she needed approval, when she was unable to get that approval.

53.     In all respects and at all times, Plaintiff performed her job in an exemplary manner, adhered to any restrictions of her position, and deferred – unnecessarily – to her employer's request for additional safeguards when requested. The claim that Ms. Solache was insubordinate is pretextual and baseless.

54.     As a direct result of this retaliatory termination, Plaintiff has suffered injury and requests a judgment for damages, including front and back pay, loss of unvested deferred

compensation, damage to reputation and other reasonable consequential damages in an amount to be determined at trial, but in no event less than One Million Dollars ($1,000,000.00) in compensatory damages; punitive damages; the costs and disbursements of this action, including reasonable attorneys' fees; all relevant interest; and any such further relief to Ms. Solache as this Court deems just and proper.

## AS AND FOR A FOURTH CLAIM
(Retaliation Under the New York State and City Statutes as to Defendants CBS and Morrison)

55.　Plaintiff repeats, reiterates, and realleges each and every allegation set forth in Paragraphs "1" through "57" above as though fully set forth herein.

56.　Both the New York State Executive Law and the New York City Administrative Code prohibit workplace discrimination in the form of retaliation.

57.　As set forth more fully above, Plaintiff had a very positive reputation at CBS as a result of her performance during her tenure there.

58.　When Morrison requested that Ms. Solache get approval for an internal trade for which she was not required to get approval, Ms. Solache complied and proceeded promptly to obtain the requested approval.

59.　When Plaintiff was unable to get Morrison's approval for an external trade for which she was required to have supervisory approval, she did not execute the external trade.

60.　Morrison's claim that Plaintiff was insubordinate is pretextual and baseless.

61.　The facts set forth herein demonstrate clearly that Ms. Solache's termination was in retaliation for her questioning CBS as to why she was being treated in a manner disparate from her American colleagues.

62.     As a direct result of this retaliatory termination, Plaintiff has suffered injury and harm and requests a judgment for damages, including front and back pay, loss of unvested deferred compensation, damage to reputation and other reasonable consequential damages in an amount to be determined at trial, but in no event less than One Million Dollars ($1,000,000.00) in compensatory damages; punitive damages (under the City Administrative Code only); the costs and disbursements of this action, including reasonable attorneys' fees (under the City Administrative Code only).

Jury Demand

63.     Plaintiff hereby demands a trial by jury.


WHEREFORE, Plaintiff Maria E. Solache respectfully demands judgment against Defendants on her various causes of action as set forth herein, together with such other and further relief as this Court shall deem just and proper.


Dated: New York, New York
       October 7, 2019



Neal Brickman, Esq.
The Law Offices of Neal Brickman, P.C.
Attorneys for Plaintiff Solache
420 Lexington Avenue - Suite 2440
New York, New York 10170
(212) 986-6840
(212) 986-7691 (Fax)